Good morning, Your Honors, and may it please the Court. Gregory Keenan, appearing on behalf of Appellant Grimm. I'd like to reserve three minutes, if I may. So, can I ask a question just up front on this? Sure. So, your client, his dad owns a company that creates a software that would supposedly prevent the problem that you're saying happened in this case. Is that right? That is true. And his dad had sent a notice to the City of Portland saying, you should buy my software. That said something to them? Certainly didn't say to buy it. I think made them available that that was an option. So I'm just trying to figure out, is this a lawsuit where your client, you know, was this done intentionally? I'm trying to figure out. Was this done intentionally in order to try to demonstrate the need for this software? No, Your Honor, and for reasons for that, if I may.  So, first, the City makes a big deal out of this email, but the record also indicates and they point to that this email went to tons of other cities. No one else was embroiled in any lawsuit. My client's not involved in any other lawsuits. This app isn't involved in any lawsuits. This case has been going on for seven years. The vehicle is owned by the father or not? The vehicle in the stipulated facts is owned by my client, not the father. The registration is still in the father's name. They share the same address. But it's undisputed that my client owns it and that he has had continuous and sole use of the vehicle for the duration. Number two, just as a legal theory matter, nothing about our theory turns on that app. No, I guess that's a good point. Maybe I shouldn't even ask the question, but I'm not sure anything turns on that, but it does. It's an interesting fact, I guess. Certainly, but most importantly, we're concerned with the government's use or failure to use its own app here. And I'd just like to put to the fore, this reflects a really concerning problem that Justices Thomas and Alito have stressed over the past decade. They have noticed that as advances in technology make it easier and easier for governments to identify and contact property owners, concerningly, states and governments are doing less and less. We think this case is a prime example. So there, I would point to the city's own app, the city's Parking Kitty app. It's an app the city uses and encourages citizens to adopt to pay for public street parking. It's downloaded directly from the city's own website, and it requires a citizen to provide scores of contact information, mailing address, email address, phone number, license plate, credit card information. That app is then used to permit drivers to pay instantaneously from their phone, but also to receive – Is the city receiving all of that information anytime someone downloads the app or uses the app, their address information, their phone number, et cetera? The city's agent, Parking Kitty, is the one who is collecting that information. If that information were in the city's hands, would it be subject to public records requests? Not certain. My hunch is that it would be, but I wouldn't know a certain answer. So that if I sign up for Parking Kitty under your – if the city adopts the changes you want, if I sign up for it, my credit card information becomes a matter of public record? No, Your Honor. That's because our theory in the case law does not turn, as the district court erroneously thought, on what is currently in the city's possession. That's not my – well, go ahead. I'll try and answer it more directly. I apologize. We don't think that it's subject to public records requests if it remains in their agent's possession. The pertinent question under the case law is, is that information reasonably accessible? That traces back at least as far back as Mennonite, which clarified that when conducting a Mullane analysis, one has to look at the information – But right now, there's no mechanism by which the city is receiving that information from Parking Kitty, correct? That appears to be the case. If they created that mechanism, that information wouldn't be subject to public records requests? I mean, if they have – if the city says, like, from now on, every time someone signs up for Parking Kitty, the city has an open pipeline to that information, then still, they can keep it private? I understand the concern. I'm not sure that the fix would require the city automatically getting that information, as opposed to a – on an ongoing basis, someone picking up the phone and finding out. So, perhaps in the record, there's an interesting example of this. During the COVID pandemic, the city of Portland started to have the Portland Police Department, in instances of tows, look up publicly available records at the DMV. And if they could find a phone number associated, pick up the phone and just call. I don't know that the city would be required to necessarily keep a repository themself of this contact information, such that it would raise concerns of these public record requests. I have a different question, which is, I mean, really how you get around our holding in Clement v. Glendale that parking tickets are generally sufficient to give notice. I don't understand what in that case tells us that now we have to add something additional just because parking is done through an app. Of course, Your Honor, I would respectfully disagree with that reading of Clement. I think the prior panel opinion in Grimm clarified that what Clement was addressing was whether or not notice was required, not assessing the discrete procedural question here as to what method of notice is required. And those are governed by two totally different legal standards. So, whatever Clement was saying – and it mentioned a litany of potential options that did mention knocking on a door or mailing out a letter, all sorts of things. I don't think that was a whole – Let me – so, it seems to me that your position then is that because we have, in theory, the technology – now, I think we've talked about the fact that maybe this particular app doesn't transfer that information to cities. So – but we probably all agree that in theory, like, the technology could – would be available that could be more so that you're giving people notices on their cell phones or by email or something, something other than just a notice on their window of their car. It seems to me your argument is because it's possible to do that now – probably wasn't – wasn't 50 years ago when you didn't have apps – but because it's possible that the Constitution requires that. And that's an interesting argument. The thing that – the thing that I'm struggling with about that is – and I get – I think you started your argument by saying, you know, that there's a – there's a problem with abusing parking. And maybe there is. Maybe there – but, you know, municipalities abusing and towing vehicles. And I seem to remember something about that for a time when I lived in Dallas about the constables misbehaving and doing – so I think that – I think you're probably right about that generally. What I'm struggling with is, in this case, is – as I understand it, he did use an app to actually buy the parking for – and he's not an idiot, so he knows when he buys it. He only bought parking for that one day or 12 hours or whatever it was. And so isn't he kind of on notice that, listen, if you leave your car parked there for a week or two weeks or whatever – 10 days, whatever the time was, there's a good chance your car is going to be towed. And why does he necessarily need to have an app tell him that when he only bought eight hours of parking? Yeah, so the Supreme Court in Jones addressed this and discarded this argument. It comes up a lot because it does have a raise it in these types of cases. But the case law, dating all the way back to Mullane in 1950 and clarified as recently as Jones, has consistently stressed that the common knowledge that if you break the law, fail to pay taxes, et cetera, fail to pay for your parking, that that could result in a property deprivation is very different than the type of notice that's required when the government decides to specifically tow your car. So – but they did give him notice. Your argument is – I mean, I don't think there's a dispute that they put lots of tickets, but most importantly, for purposes of this case, they put the thing saying, I think, two days before you're going to get towed. And your argument is, yeah, but he didn't get that. And so I think your argument is that he has to – I know you kind of disclaimed this, but your argument is that he has to get – it kind of devolves to he has to get some sort of notice with his phone. Otherwise, they're not going to be sure otherwise. Sure. And so why would he not know, you know, they're going to try to give me notice on my car. I'm going to be – this is over the holidays, if I remember right, or something. So I'm going to be out of town, I assume. He was off somewhere. And so I'm probably not going to get that notice. The same way as if he had said, you know what, I really like taking time off during the holidays. I'm going to just leave my phone at home. So that's sort of what – I'm probably going to get a notice on my car, and I'm not going to get that notice. Why does he not have some responsibility for that? I mean, the case law is clear that the ability to safeguard – I mean, and the courts have recognized the Supreme Court has put it beyond dispute by this point of 70 years of case law – the ability to safeguard one's own property interest does not alleviate the government of its burdens regarding notice. But more importantly, I just want to clarify, we're not saying that you have to use the phone. That's just one option. The case law makes clear you do have to consider – What was their other option in this instance? Sure. The other option would be mailing. And mail has been – I think, right? The mail – the car was registered in – the car was registered in the father's name, so the mail wouldn't even have gone to him. Three points on that. One, Mennonite and Mullane and Green recognize that where mail is an available option associated with the property if there's an address, sole reliance on posting is insufficient. Courts such as the District Circuit applying the Mullane test in the tow context in the case of Propert, which we cite in both our opening and reply, applies this directly to cars, saying, hey, if the car is registered, you can go find contact information under Mullane-Jones. But does it make a difference – does it make a difference that in the D.C. case, Propert or Propert, and in Jones and in the other cases we're talking about, the government's action was a permanent deprivation of property as opposed to your car – you left your car sitting on the streets, of course it's going to get towed eventually, and you can go redeem it. I understand the question. Under Ninth Circuit law, no, because the Ninth Circuit's been clear that even a temporary deprivation still counts as a deprivation. Temporary deprivations of property count, but we're talking about an overall standard of reasonableness here, right? Reasonable, but as clarified by two things. One, reasonable if someone actually desires who is responding to unique information that they're learning as to the particular situation, and more importantly, actually desirous and reasonable as the case law for over 50 years has teased out, that if a mailing address is available, you can't rely on posting a loan, and I have not found a single Mullane-Jones case – But I don't – that – it seems like you're kind of arguing two different – one, you're saying, well, I've got – I've got this, like, legal standard that you should have a mailer, something in the mail, even though I think we all acknowledge that, like, that would have made no difference in this – in this case. First of all, the time delay. Second of all, it would have went somewhere that didn't even – wouldn't even went to him. And so you're – so your argument seems to be in different directions. On one hand, you're saying you need – I think if we were to buy your argument, we would have to say, yeah, the city has to mail, the city has to post, and the city has to have an app, you know, in order – like, what – I'm trying to figure out what – Or do you need a face-to-face – Where do you want to – Face-to-face contact. Right, or door knock. Sure. Yeah, yeah. So what would – like, what would you – what would the standard be for – like, that you think would be sufficient here? I'd probably just go with the Supreme Court's standard in Jones, which says we're not supposed to prescribe for the city the particular method they're supposed to use. It's enough to say that there are other available options that they failed to make use of. So they would have to – so I – You'd have to do everything. So they would have to do everything under that standard. You would have to at least do the mail for a mailing address. And just to respond very quickly, if I may, to the question – The mail wouldn't have gone to him here. The car wasn't registered. That's what I was trying to respond to. So in Jones, it's interesting because the property owner actually didn't live at the address, and so they were mailing certified mail to the address. It was the guy's daughter who lived there, and the Supreme Court still said you should have gone back to non-certified mail, just sent it to whoever's there, because it might, as a matter of pragmatics, bring it about to their attention. But Jones, if I'm not mistaken, was a situation where the government had reason to know that the letter didn't reach the individual. How was the city to know here that your client wasn't just ignoring the parking tickets, as some people do? Well, one of the district court, and we think properly, found that the reasonable inference to draw from the tickets piling up was just that they weren't being received. And Millian Jones doesn't turn on –  Sure, but we don't know in Jones if it's being returned because he's ignoring them or because he's – the test doesn't really turn, and it never has on – But there you're clear that it – whatever is happening, it hasn't – this registered mail has not been received. It's not been opened. But here, you know, you have a tow notice on the windshield. I don't – so I don't really understand how those are equated. We have eight tow notices posted on top of each other over the course of a week, going undisturbed and photographed. So there's just this big stack of, you know, papers piling up. It's pretty clear he's not getting them, and I think the district court was right to draw that inference. Why is that the inference rather than this case is a setup to test the case, and he's deliberately ignoring the parking tickets in order to provoke the test? I would say just as a procedural matter, I think at this posture, the inferences go in the non-movement's favor. Does it matter – here's how the Chief Justice concluded his opinion in Jones. In this case, the state is exerting extraordinary power against a property owner, taking and selling a house he owns. The deprivation here is not even remotely comparable. Does that make a difference? Well, the Ninth Circuit, both in Clement and this prior panel in the Grimm case, has stressed that – Ninth Circuit case law has for a long time stressed that a car deprivation, when you need it, when you want to use it, the uninterrupted use is a serious deprivation. And pragmatically speaking, I mean, it's probably the most significant or second most significant piece of property that a person owns is their car. And it's not being taken and sold a la property, right? That's correct. It's just being towed out of a place it's not supposed to be. And the test under long-standing precedent is when you disrupt that property interest, even if it's temporary, such as in Chin Yee 2, which was a suspension, you have to comport with the strictures. One of the difficulties under the facts of this case is that although a car deprivation is extremely serious, here you have a car that's clearly just been sitting there. At some point, it starts to look like the person who owns the car doesn't actually need the car that much because you have tickets piling up on the windshield. So I think it's – I think that's somewhat in tension with this argument that this is something that's really important, that you really need, that you can't be temporarily deprived of. I see I'm over my time. Can I just answer that question? Yes. There's record evidence under a testimony that he was checking his phone, he was checking his email, that he did need to make use of the car on a particular day. The subjective experience was he returned, the car was gone. He called Retriever Towing because that's where the city told him it was towed to. Retriever Towing told him initially they didn't have the car. He didn't know where the car was. This is all in the record. He went to Retriever Towing. They wouldn't release it to him for several days until he paid the full amount. He missed Christmas as a result. So I just think the facts in the record do demonstrate he was trying to make use of the car. And it's not just the tow, it's also the private lot that has it impounded and it's not going to give your property back until you pay the money. All right. Well, we've taken you way over. I'll give you a couple minutes for rebuttal time. Thank you, Your Honor. Yeah, thank you. We'll hear from the city. I can tell we're going to be really aggressive against your position. May I please the court? Elsa Haag for the city of Portland. The district court correctly concluded that the pre-tow placard placed on Grimm's vehicle two days before towing was constitutionally adequate under the Mullane-Jones standard. And Grimm's arguments on appeal do not undermine that conclusion. So we'd ask this court to affirm the judgment of the district court. Under the Mullane-Jones test, the pre-tow warning was, quote, notice reasonably calculated under all the circumstances to apprise interested parties with due regard for the practicalities and peculiarities of the case. More specifically, the city, one, had no reason to suspect ineffective notice, and two, no additional reasonable steps available to attempt further notice that were also practicable under the circumstances. So I'll address each of those elements in turn. As for reason to suspect ineffective notice, as this court has already pointed out, the undisturbed notices, it's not a reasonable inference that Mr. Grimm was not receiving notice. That just isn't enough to give the city reason to suspect that they had to take further steps. In that sense, you disagree with the district court on that? Yes. Yeah, we do disagree on that point. In addition, the pre-tow warning placard was disturbed. That one was missing. So Mr. Grimm is asking for an inference in both directions, that both undisturbed and disturbed notices gave the city reason to suspect that. I also want to address the question about the adequacy of notice and the type of deprivation and this idea that the permanency of the deprivation is a factor. And we agree that towing a vehicle is a deprivation and it does require notice. But as the court has pointed out, the fact that it's pre-tow notice and there is further notice after the tow, that does affect what's reasonable and practicable under the circumstances. And in proper, which is non-binding here, the posting there was insufficient for pre-destruction notice, which the court is the wording of the court there. The court also noted, it may be, as GC contends, that the warning sticker provides adequate pre-towing as opposed to pre-destruction notice. So we think that's an important distinction and really distinguishes proper. In addition, when we look at the affairs of men and reasonable expectations, as the court has pointed out, and the Supreme Court held in Green versus Lindsay, it's reasonable to expect that someone to look at how notice applies with how the affairs of men are ordinarily conducted. And with a vehicle parked downtown where it's short-term parking and Mr. Grimm paid for a couple of hours of parking, it's reasonable to expect him to return to his vehicle. And in fact, he did eventually return to his vehicle and he did that, saw that vehicle wasn't there and called the towing company, called the city and then discovered where his car was. As for the other methods for notice, in Duesenberry, the Supreme Court held that new technology does not make old methods insufficient. So the Constitution doesn't require new technology. As for mail, the court in Mennonite did not say that mail was the constitutional minimum. The court said, quote, mail or other means as certain to ensure actual notice if name and address are reasonably ascertainable. That's at 800. And here, as the court noted, the mail wouldn't have reached him and the name and address were not reasonably ascertainable. It's in the stipulated facts that the parking enforcement officers, quote, did not have vehicle ownership information and specifically did not have the name or contact information for the owner or user of the vehicle. So why doesn't the city have access to the information that drivers put into the app? The city doesn't have that information because Passport, which owns the Parking Kitty app, it's a third-party app. The city contracts with Passport and has a white label use of the app, but the city doesn't have a regular integration. My question is why not? I assume those are terms of the contract that could be altered. Yes, so that's the way the app is set up. I'm not exactly sure of the precise reasoning for that, but that's the way it's set up. Do you know whether it was the private party app developer that is the impetus behind not wanting to share that information or if it's the city saying we don't want that information? Do you know which way? I don't know and that's not in the record. All that's in the record is that... If the city was to say, hey, we really want that information, is there a... And we get these cases about breaches and disclosures of people's personal information. So I suppose it's possible that a city might say, you know what, we just don't want to have that. That's just another thing that could go wrong and we could end up with a breach. Does that ever come up as somebody who works in the city? I think that would be a reason. I don't know precisely what the city's reasons are, yeah. But the constitutional standard doesn't require these heroic efforts and doesn't require that the city force a private business to provide us that information in this unique case for Mr. Grimm's vehicle. And we don't need to pry that information out in this situation. And the stipulated facts show that we didn't have that information available. Parking Kitty does not regularly share that information. And so under the constitutional standard, the city didn't need to do more in this situation. That's the question. Does the app allow you to just keep on, like walking up physically to the meter and putting money in? Would it have been possible for Mr. Grimm to keep paying his, or does he have to move his car and the app doesn't really allow you to just every day? In other words, could he have just paid the amount every day and avoided all this? I'm not sure whether, I know that the different, you know, you enter in what zone you're parked in. And so when you enter the zone, it's tied to whatever the limits are. So I know from personal experience that if your two-hour time ends and it's two-hour parking, you can't add more time after that. I'm not exactly sure whether on the next day you could. So I would also just note that with certified mail, a feature of using that method is that the government is given actual knowledge of whether it was effective. And so a lot of the cases where the court did require mail, Jones, Mennonite, Green, Yee-Too, that was a feature of the government's notice method. And with posting on a vehicle, that just isn't the case. And there isn't the system set up to give the government actual knowledge. How long does certified mail take? Send and then determine whether you've allowed sufficient time for an acknowledgement of receipt to be returned. Your Honor, I'm not sure the exact time frame. I would imagine a few days, at least a week, in this situation where the registered owner and the lien holder are both out of state. And typically a certified letter would be held for, what, seven or 15 days at the post office for somebody to pick it up? Yes, I believe it's held at the post office for 15 days, or it was in Jones. Yes, I would also note that in the delays for Mr. Grimm in picking up the vehicle after the tow, part of that delay was because of the requirement to get a notarized document from the registered owner of the vehicle. So part of that delay was because the registration was to Mr. Grimm's father. So I believe that one other important point here, Mr. Grimm argues that there's no balancing that's appropriate in this case. And I just want to note that under Mullane-Jones, there is still some consideration of the state interest and a balancing. In Jones, the court said, assessing the adequacy of a particular form of notice requires balancing the interest of the state against the individual interests sought to be protected by the 14th Amendment. That's at 229 and quoting Mullane. So in Grimm 1, this court never purported to overrule Jones, nor could it. The court was simply talking about using balancing under the Matthews test to decide whether notice was appropriate. But that doesn't change the fact that you still do some amount of balancing in looking at the adequacy of a particular type of notice under Mullane-Jones. Here, the city's interest in enforcing downtown parking codes is at play. And that goes to whether or not mail would be reasonable under these circumstances. And requiring mail would simply ignore the consideration of the practicalities of the case. So it seems that the court understands the issues at play here. And if you have no further questions. No questions from either of my colleagues. None from me either. So we'll go ahead and allow Mr. Keenan a couple more minutes to respond.  Thank you. Thank you, Your Honors. Just like to start with the dispute between how to read Mennonite. So Mennonite said where mailing address is associated with the property, you have to use something at least as likely as the mail. The city wants us to read that to include posting. But the very teed up first sentence of Mennonite is we're assessing whether or not constructive notice by publication or posting is sufficient. So to read that as then saying posting is sufficient, we just think is a misreading of Mennonite. More importantly, the idea that you could just turn a blind eye to readily available contact information would create a circuit split with the Eighth Circuit and the First Circuit, which reads Jones to reject that argument. Of course, Jones tells us we have to consider unique information about the particular person. So defendants try these arguments. And at least in the Eighth Circuit and First Circuit, the argument has been expressly rejected because it's all about what's accessible. So the First Circuit says you have to look at obvious places. You have to ask. You have to pick up the phone and try. The Eighth Circuit expressly in Lynn Farms rejected the district court's reading of Jones saying you don't have to do the search. The reading that I will note was based on the syllabus of the case and not the actual part of Jones that's a little bit more nuanced when you get down to the meat and potatoes of it. Finally, I would stress that even in the Toe context, and I admit that it's persuasive authority, but this long-standing feature of the Millane-Jones standard, tracing back to Mennonite, that if there's information available, you have to use it and you can't rely on posting alone, has been adopted and applied in a straightforward manner, even in the Toe context by at least the Vasquez Court, which is an Illinois state court, and the Propert Court. And we would just stress that in Grimm 1, the Ninth Circuit said very clearly, this is a registered card. It was registered at the time of the Toe. That means there was information that could be found. That means something under Millane-Jones due to Mennonite. So help me out, though, on this question of delay. How long does the city have to wait to Toe if it has to rely on first-class or certified mail? We're not talking about destroying the car, selling the house, anything like that. We won't know because they didn't actually try. We also don't know how long mail takes, but my understanding is mail takes approximately three days, according to the U.S. Postal Service. Approximately? Sure. So the warning placard was left two days before the Toe, I believe. We would submit that what they weren't free to do and what's undisputed is that they did do is wait until after they Toed to even go and look up the contact information. But looking it up before and dropping the letter in the mail would have at least helped. I mean, this is what's challenging, is you're saying that they should have done something. Three days would just be enough time to possibly that it would get there. It would never be enough time to know whether or not the person actually got noticed who, say, certified mail or something like that. You wouldn't even have enough time if they had gotten noticed to get the answer back. So then it sounds like your argument is basically that they just need to jump through this other hoop, even though, as you've heard from all of us, none of us think that that would have made any difference here because he wouldn't have gotten it, right? It would have went to his father. That's a hard argument for you because you're basically saying, we just wanted one other box to be checked that wouldn't have made any difference at all in my case, and you want us to accept that. Well, you see why that's a challenge. Of course. But I think the argument kind of cuts the other way because the city wants to say, well, we have this app and we have this instantaneous contact information, but we can't use that. And, okay, so we have to use something slower. But, oh, man, the mail is too slow, especially if we wait until... What they're saying is if we put a bunch of notices on your car and you're parked illegally, we kind of expect... I understand you're saying, well, there's some precedent. Some of that doesn't have to do with towing cars where you're not destroying them or taking them or anything. And so it's hard to see. I think the Supreme Court would have had a different... But would have reached a different conclusion for something like towing versus taking somebody's house. Just the answer to that is I've worked this case for seven years. I honestly think at this point, I've read more notice cases than I ever cared to. And I cannot find a single case where there's a mailing address available and the constructive notice of posting is enough. And it's persuasive authorities that do it in the tow case. But, I mean, it's consistent. I mean, it's about as consistent of a line of precedent as you'll find. So I would just... I'm still just thinking about the consequences of the rule that you're advocating. Because if we're saying something like, I don't know, 15 days for the certified mail, then over something like a holiday period where everybody's coming into town, everybody wants to park, no one wants to pay for parking, you could have people just filling the downtown streets with their cars, leaving them and then saying, well, now we get to stay here for two weeks. I mean, we can't consider that kind of... Of course, but the Ninth Circuit had two answers to that and its precedent in Clement. One, just the quicker you give notice, that actually advances the government interest in getting the car moved. And then two, it was clear the answer to that is just raise the fines. I mean, there are other ways to punish and deter people, but what's very clear is towing and giving short shrift to notice just isn't going to pass most under Ninth Circuit precedent. So it's a legitimate concern. It's just you don't get to kind of cut down on the notice to take care of it, in part because Jones and Mennonite also recognize giving quick notice is the most efficient way. So pragmatically, if I was running the city, I'd probably just pick up the app and kind of send notice and say, it's the holiday season, move your car, you're getting towed. Last week, I was on a beach in Oregon where a sign was posted by the access road. In emergencies, vehicles will be removed by all available means. I take it you would have no problem with that. Yeah, absolutely not. Grimm 1 and Clement were both clear to say this is about non-exigency circumstances. So if this was blocking a fire lane, if there was a block impeding traffic, parked on a sidewalk or... We talk about snow emergencies. I don't know if that's a thing in Portland.  I spent some time in Chicago and I would consider that an emergency. And in that situation, I think that would fall in the exception to the general rule. But Grimm 1 made clear we're in the ambit of the meat and potatoes, normal situation, non-exigency. You got to meet the strictures. It sounds like it could take a month, right? Thank you very much, counsel. We took you way over. And any further questions from either of my colleagues? Thank you to both sides. We have one more argument. Let me ask. I think we're going to plow through here for our last case, which is Connolly v. O'Malley.
judges: Hamilton, VANDYKE, THOMAS